IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DONNA J. COSTON,

    Plaintiff,

  vs.                                          Civil Action 2:07-CV-1270
                                                            Judge Frost
                                                             Magistrate Judge King

MICHAEL J. ASTRUE, Commissioner
of Social Security,
    Defendant.

## REPORT AND RECOMMENDATION

       This is an action instituted under the provisions of 42 U.S.C. §§405(g), 1383, for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income. This matter is now before the Court on the plaintiff's *Statement of Errors*, the Commissioner's *Memorandum in Opposition* and Plaintiff's *Response to Defendant's Memorandum in Opposition.*

       Plaintiff Donna Coston filed her application for benefits on September 18, 2002, alleging that she has been disabled since June of that year. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

       On November 10, 2004, plaintiff, represented by counsel, appeared and testified at the hearing, as did Jerry Olsheski, Ph.D., who testified as a vocational expert. In a decision dated June 21, 2005, the administrative law judge concluded that plaintiff is not disabled. The Appeals Council declined review. Plaintiff filed an action in this Court seeking judicial review of that decision. *Coston v. Commissioner of Social Security,* 2:05-cv-01058 (S.D. Ohio, November 23, 2005). This

Court remanded the matter to the Commissioner for further consideration of plaintiff's mental impairment. *Id.* at Doc. Nos. 11, 12, 13; *see also, A.R.* 487-501.

A supplemental administrative hearing was held on June 27, 2007, at which plaintiff, again represented by counsel, again testified, as did Cynthia J. Wyatt, Ph.D., who testified as a psychological expert, and Bruce Growick, Ph.D., who testified as a vocational expert. *A.R.* 421-61. Relying on the testimony of these experts, the administrative law judge found that plaintiff has the residual functional capacity to perform work that exists in significant numbers in the economy and that plaintiff is not disabled. *A.R.* 382-410. The Appeals Council denied plaintiff's request for review, *A.R.* 370-72, and the matter is once again before this Court.

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion, *see Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).

Plaintiff, who was born in 1949, was 57 years old on the date of the most recent administrative decision. She has a high school education and some college. She has not worked since 1991, when she quit her job as an office manager.

Testimony from the November 10, 2004 hearing reveals that plaintiff has a history of suicide attempts by overdose. She testified that she continued to suffer from depression: "[I]t got to the point that I would just sit there on the couch, wouldn't do anything, and I was crying all the time." *A.R.* 350. Plaintiff was taking Wellbutrin and Trazodone but still entertained thoughts of suicide, *A.R.* 351, although she had not attempted suicide within the two years prior to that administrative hearing. *A.R.* 352. She had low energy and left her home only twice per week, usually to drive to a nearby store. *A.R.* 354. She cooked, mopped the floor and did the laundry. *A.R.* 357.

Plaintiff explained at the first administrative hearing that she never attempted a return to work because she was not familiar with computers and because her boyfriend was supporting her. Moreover, her depression remains her greatest impediment to working. *A.R.* 357. "Now I get days where I just, I can't concentrate on anything and I'll just sit

there and stare off into space." *A.R.* 358. She experiences these episodes approximately two days per week.

Prior to the June 27, 2007, supplemental administrative hearing, plaintiff had married and now lives with her husband. *A.R.* 425. She drives a couple times a week to Wal-Mart. She dresses and grooms herself without assistance. She cooks, washes dishes and does laundry. *A.R.* 428-29. She attends church services, which last about two hours, weekly. *A.R.* 429. She goes grocery shopping once or twice every two weeks. She enjoys going out to eat every couple of months. She sees a sister occasionally. She spends her day sewing, crocheting, playing games on the computer and watching some television. *A.R.* 431. She cannot work because, in addition to physical problems, she cannot concentrate and she cannot use computers. *A.R.* 432, 437, 439.

Some of plaintiff's medication makes her sleepy. *A.R.* 433. She experiences crying spells, which last all day, several times per week. *A.R.* 434, 442. Some crying spells have a specific trigger; others do not. She last thought of suicide in April 2005, when she took too many pills. *A.R.* 435.

Plaintiff also testified that she is in constant pain. On a scale of 1 to 10, she rated her pain at 10 "lots of times," *A.R.* 436, perhaps 3 days per week. *A.R.* 437. She has not been hospitalized, however.

Treatment notes from plaintiff's family practitioner, Thomas Forrestal, M.D., include regular references to depression, anxiousness and stress. *See, e.g., A.R.* 297, 300, 304, 308, 312, 316, 320.

In April 2003 plaintiff began treatment with Darrell Smith, M.D., a psychiatrist, who diagnosed depression. Plaintiff's Global

4

Assessment of Functioning ["GAF"] at initial intake was 50, which is indicative of moderate dysfunction. After 90 days, Dr. Smith indicated that, after some initial improvement with medication, plaintiff relapsed and "seems to be very depressed." *A.R.* 204.

In June 2003, plaintiff underwent a consultative psychological evaluation by Margaret G. Smith, Ph.D. Plaintiff's appearance was appropriate, as was her behavior. Her mood and affect were normal, although plaintiff reported crying spells 3-4 times per week. *A.R.* 198. Plaintiff was oriented. Immediate memory was reduced but long-term memory was in the low dull-normal range. Plaintiff's general fund of knowledge was in the normal range, as was her ability to abstract. Dr. Margaret Smith diagnosed major depression and alcohol abuse, reportedly in remission. She placed plaintiff's GAF at 35. In addressing plaintiff's functional limitations, Dr. Smith indicated that plaintiff's ability to execute simple instructions was in the normal range, her ability to maintain appropriate attention and concentration was at least mildly to moderately limited but she should nevertheless be able to perform "simple to low moderate tasks. ..." *A.R.* 201. Plaintiff was not limited in her ability to relate to fellow workers and supervisors. However, plaintiff's major depression, "which is becoming increasingly severe," *Id.*, resulted in a moderate to marked limitation in her ability to respond to work stressors. *Id.*

In July 2003, a state agency psychologist reviewed the evidence and concluded that the record documented an affective disorder which resulted in no more than moderate limitation of function. According to the reviewing psychologist, plaintiff "would be able to remember and

5

carry out simple 1- 2- 3-step tasks," and "would be able to maintain attention for simple 1- 2-step tasks." *A.R.* 212.

In August 2003, Dr. Darrell Smith reported that plaintiff "generally is doing much better." *A.R.* 284. However, plaintiff later reported that she had become "quite despondent with suicidal ideation" by the late summer of 2003. *A.R.* 283.

In February 2004, Dr. Darrell Smith completed a mental residual functional capacity assessment of plaintiff in which he indicated that plaintiff was moderately to markedly impaired in almost all areas of work related activities. *A.R.* 328-30. He also indicated that plaintiff's condition would likely deteriorate if she were placed under stress, particularly that of a job. *A.R.* 330. However, the psychiatrist also indicated that plaintiff's impairment had not lasted or was not expected to last 12 months or more. *Id.*

In May 2004, Dr. Darrell Smith increased plaintiff's medication based upon plaintiff's complaint that she "is regressing somewhat." *A.R.* 327. However, the psychiatrist noted that plaintiff's mood seemed fairly bright and she was appropriate, relevant and coherent. *Id.*

In September 2004, plaintiff reported to Dr. Darrell Smith that her mood "has deteriorated a bit." *A.R.* 326. Although she was less depressed, she was also less active. She reported sleep disturbances. Dr. Smith changed some medication. Id.

In April 2005, plaintiff was admitted to a psychiatric unit following a suicide attempt. *A.R.* 280-81, 519-24, 549-67. She was released three days later at her own request: "In reality, I should have stayed for a much longer time because my depression is still just as bad as when

6

they put me there, if not worse." *A.R.* 281,510. George T. Moses, D.O., a psychiatrist who examined plaintiff during that hospitalization, diagnosed a major depressive disorder and recurrent anxiety disorder. *A.R.* 523-524.

Plaintiff saw Dr. Darrell Smith the following month and reported that an increased dose of Wellbutrin had made her worse, so she discontinued it and "feels much better." The psychiatrist prescribed Lexapro. *A.R.* 614.

Dr. Darrell Smith's progress notes from July and August 2005 indicate treatment for depression with psychotropic medication with variations in symptoms related to situational stress and interpersonal relationships. *A.R.* 568.

Dr. Forrestal continued to treat plaintiff periodically through 2007 for a variety of complaints and medication refills. *A.R.* 637-860. He noted depression and anxiety/stress as unresolved problems, although his treatment notes indicate that plaintiff rarely complained of specific problems with depression or anxiety. On May 2, 2005, plaintiff reported that she had stopped taking Wellbutrin; she felt better and had no suicidal thoughts. *A.R.* 778. On July 21, 2005, plaintiff complained of depression, anxiety and stress, although Dr. Forrestal characterized the conditions as stable. *A.R.* 761.

On July 13, 2005, plaintiff contacted Dr. Darrell Smith's office, reporting that she had been off anti-depressant medication for two months. She had recently broken up with her boyfriend, was not sleeping well and had racing thoughts. Plaintiff requested a prescription for Elavil and Trazodone. *A.R.* 610. Plaintiff was prescribed Cymbalta. *A.R.* 609.

7

Dr. Darrell Smith's treatment notes from July 28, 2005, reflected an improved mood, but difficulty sleeping. Plaintiff denied any side effects with her new medication. The psychiatrist prescribed Trazadone to help plaintiff sleep. *A.R.* 606.

In August 2005, plaintiff reported to Dr. Darrell Smith that she wished to discontinue her medications; she complained of hot flashes with Cymbalta. Plaintiff felt that "her depression is largely resolved because of changes in her living situation." *A.R.* 605.

On January 19, 2006, plaintiff was evaluated at the request of the state agency by Keli A. Yee, Psy. D., who diagnosed major depressive disorder, recurrent and moderate in some remission, and a personality disorder. *A.R.* 574. Dr. Yee placed plaintiff's GAF at 60. *Id.* Dr. Yee's license to practice psychology was apparently later suspended and the administrative law judge declined to credit her opinion. *A.R.* 397.

On February 17, 2006, Alice Chambly, Ph.D., a state agency psychologist, reviewed the record and concluded that plaintiff suffered an affective disorder and personality disorder, but that the conditions did not meet or medically equal a listed impairment. Plaintiff had mild limitations in daily activities and social functioning, often experienced deficiencies in concentration, persistence, and pace and had experienced one or two episodes of decompensation. Plaintiff was moderately limited in her ability to carry out detailed instructions, maintaining concentration for extended periods, maintaining a regular schedule, interacting appropriately with the public, and getting along with co-workers. However, she was not significantly limited in the other 15 categories of the 20 categories assessed. *A.R.* 577-94.

8

On April 11, 2006, plaintiff reported to Dr. Darrell Smith that she had been depressed recently and that her ex-husband and ex-boyfriend continued to take advantage of her. She slept but was anxious. Dr. Smith prescribed Remeron and Trazodone. *A.R.* 603

Dr. Wyatt testified at the June 27, 2007, hearing that plaintiff met the "A" criteria of Listing 12.04 due to sleep and energy disturbances, feelings of worthlessness and sadness and reports of concentration difficulties. *A.R.* 449-50. However, plaintiff did not meet the "B" or "C" criteria of Listing 12.04. *A.R.* 450. Dr. Wyatt opined that plaintiff would be moderately limited in her ability to deal with stress. *Id.* Dr. Wyatt also noted that plaintiff's memory "appears to be fine, she did an excellent job here remembering things." *Id.* Plaintiff would have no trouble following simple and moderately complex instructions and maintaining attention. *A.R.* 450-51. She would have slight problems dealing with the public, completing a workday, persisting in tasks and dealing with changes at work. *Id.* Plaintiff could have more than superficial contact with others, including the public. *A.R.* 451. Plaintiff would have mild to moderate concentration difficulties, as evidenced by her good performance in this regard at the administrative hearing and during psychological evaluations. *A.R.* 452. Strict production quotas might help plaintiff concentrate. *A.R.* 452. Her concentration problems were characterized as periodic, not daily. *A.R.* 453.

Dr. Wyatt noted that Dr. Darrell Smith's February 2004 assessment was made at a time when plaintiff had been out of treatment for a period of time. *A.R.* 454- 55. According to Dr. Wyatt, that

assessment was not reliable given that Dr. Darrell Smith "had really not seen [plaintiff] for several months." *A.R.* 455.

Dr. Growick, the vocational expert, was asked to assume a claimant with plaintiff's vocational profile who could perform medium work and who had the mental limitations suggested by Dr. Wyatt. *A.R.* 456-57. The vocational expert testified that such a claimant could perform simple, unskilled jobs such as bench assembly and quality assurance jobs, there being just under 4,800 such jobs within the service delivery area of Licking, Coshocton and Muskingum Counties; and machine tending/feeding jobs, there being 8,400 such jobs in the same service delivery area. *A.R.* 457-58.

Asked by plaintiff's counsel to assume an inability to concentrate 20% of the time, the vocational expert testified that such a limitation would not preclude the jobs previously identified. *A.R.* 459. Even "staring episodes" throughout the day, for up to 1½ hours, would not preclude those jobs. *Id.* If the claimant missed work two days per month, or was off task more than 33% of the day due to pain, migraines, crying spells, or concentration problems, then no jobs would be available. According to the vocational expert, being off task for anything less that 1/3 of the workday would be acceptable. *A.R.* 460.

The administrative law judge considered plaintiff's depression and included that condition among plaintiff's severe impairments. However, the administrative law judge found that the condition was not of listing level severity. Relying on the testimony of Dr. Wyatt, the administrative law judge found:

> ... The record does not document repeated episodes of decompensation, each of extended duration. It does not document a residual disease process that

10

> has resulted in such marginal adjustment that even
> a minimal increase in mental demands or change in
> the environment would be predicted to cause the
> claimant to decompensate. She does not have a
> current history of one or more years' inability to
> function outside of a highly supportive living
> arrangement, with an indication of continued need
> for such an arrangement.

*A.R.* 401. The administrative law judge expressly rejected Dr. Darrell Smith's extremely restrictive February 2004 assessment, *A.R.* 328-30, because that assessment was not consistent with the evaluation of the B criteria, the objective evidence related to the claimant's mental status, and the factors described in 20 CFR §416.929(c). *A.R.* 406.

The administrative law judge also determined that plaintiff's subjective allegations of disabling impairments and functional restrictions were not credible. *A.R.* 403. In considering plaintiff's residual functional capacity, the administrative law judge found as follows:

> The claimant has the following residual functional
> capacity, which has existed at all times since
> September 18,2002. As Judge Hafer found, she can
> lift and/or carry 25 pounds frequently and 50
> pounds occasionally; sit, stand or walk 6 hours
> each in an 8 hour period; frequently stoop, kneel,
> crouch, crawl, and climb stairs; and occasionally
> climb ladders, ropes, or scaffolds. Mentally she
> has the residual functional capacity to which Dr.
> Wyatt testified on June 27, 2007.

*A.R.* 401 (Finding 4). Relying on the testimony of the vocational expert, the administrative law judge concluded that this residual functional capacity allows plaintiff to perform jobs that exist in significant numbers in the regional economy and that she is therefore not disabled within the meaning of the Social Security Act.

Plaintiff takes the position that Dr. Darrell Smith's February 2004 report, *A.R.* 328-30, and Dr. Margaret Smith's July 2003 report, *A.R.*

11

194-202, compel the conclusion that plaintiff's depression meets Listing 12.04. The administrative law judge, however, rejected both Dr. Darrell Smith's and Dr. Margaret Smith's conclusions and instead relied on Dr. Wyatt's testimony to conclude that plaintiff's mental impairment neither meets nor equals Listing 12.04.

Listing 12.04 requires a documented effective disorder, identified in §12.04A, resulting in at least 2 of the 4 criteria set forth in §12.04B[1] or the elements of §12.04C.[2] *A.R.* 406. A fair reading of plaintiff's mental health treatment records and records from her primary care physician, Dr. Forrestal, suggests that plaintiff's depression and anxiety have been relatively stable. Plaintiff's condition was responsive to medication notwithstanding some issues of compliance. Even in May 2005, plaintiff reported to Dr. Darrell Smith that the increased dose of Wellbutrin made her worse, so she discontinued

---

[1]Listing 12.04B requires "at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;"

[2]Listing 12.04C requires evidence of the following:

Medically documented history of a chronic affective disorder of at least 2 years duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

12

it and "feels much better." *A.R.* 614. In August 2004, plaintiff reported to Dr. Darrell Smith that "her depression is largely resolved because of changes in her living situation." *A.R.* 605. The finding of the administrative law judge, *i.e.,* that plaintiff's mental impairment neither meets nor equals Listing 12.04, enjoys substantial support in the record.

Plaintiff also contends that the administrative law judge erred by failing to give controlling weight, or at least great weight, to the opinions of Dr. Darrell Smith, a treating provider. *See Wilson v. Commissioner of Soc. Sec.,* 378 F.3d 541, 545 (6th Cir. 2004). *See also* 20 C.F.R. §416.927(d). In rejecting the opinion of a treating physician, an administrative law judge must give "good reasons" for the weight given to the opinion of that treating source. *Id.* at 544. In meeting this standard, the administrative law judge must consider certain factors, specifically "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source." *Id.* The administrative law judge's reasons must also be based on evidence in the record and "be sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

In this case, the administrative law judge expressly considered the requisite factors. As noted above, plaintiff saw Dr. Darrell Smith from April 2003 through at least April 2006. *A.R.* 203-09, 282-85, 326-30, 603-17. In addition, Dr. Darrell Smith's treatment notes reflect that plaintiff's sessions focused on situational stress and

13

interpersonal relationships involving an ex-husband and ex-boyfriend, *Id.,* relationships that have been resolved. *A.R.* 438. Dr. Darrell Smith's opinion of disability is inconsistent with other evidence of record. For example, the record reveals that plaintiff engages in a variety of activities, including driving, taking care of her personal needs and her household chores such as cooking, washing dishes, laundry and grocery shopping; she attends church every week, goes out to eat and plays computer games. In addition, Dr. Darrell Smith's opinion is inconsistent with that expressed by Dr. Wyatt as well as those of the reviewing mental health experts. *A.R.* 212, 577-94. Under these facts, the Commissioner did not err by failing to give controlling weight to Dr. Darrell Smith's opinion.

Plaintiff also contends that the administrative law judge improperly picked certain evidence and rejected other evidence. In assessing plaintiff's impairments and determining plaintiff's residual functional capacity, the administrative law judge reasonably relied on the testimony of Dr. Wyatt. *A.R.* 399-401. In *Richardson v. Perales*, 402 U.S. 389, 408 (1971), the Supreme Court held that an administrative law judge may rely on the testimony of a medical expert. *See also* 20 C.F.R. § 416.927(f)(2); *see Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001). The administrative law judge's reliance on the opinion of a non-examining medical expert is proper if the expert's opinion is based on objective reports and opinions. *See Barker v. Shalala*, 40 F.3d 789, 794-95 (6th Cir. 1994); *Loy v. Secretary of Health and Human Services*, 901 F.2d 1306, 1308-09 (6th Cir. 2001). The question is, of course, whether the Commissioner's decision is supported by substantial evidence in the record as a whole. See *Perales,* 402 U.S. at 401. In this case, the

14

administrative law judge provided a detailed and comprehensive discussion and analysis of all the evidence in the record and appropriately weighed the medical opinions of record. His findings enjoy substantial support in the record.

It is therefore **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED** and that this action be **DISMISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within ten (10) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within ten (10) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

January 16, 2009                                     *s/Norah McCann King*
                                                                                 Norah McCann King

United States Magistrate Judge